# VAN FLEET *v.* KING.

EQUITY PLEADING; PARTNERSHIP; ACCOUNTING; NOVATION.

1. Where a cause is heard on bill and answer, the answer must be accepted as true in every particular. (Following *Alfred Richards Brick Co.* v. *Trott*, 16 App. D. C. 293.)

2. Where a partnership business was sold subject to a chattel deed of trust securing promissory notes made by one of the partners and indorsed by the other partner, the proceeds of which had been used in the business, under a partnership agreement that the notes were to secure the indorsing partner for money advanced and debts assumed by him for the partnership account; and the holders of the notes accepted in lieu thereof, the purchaser's notes, payable monthly in from one to fifty months, similarly secured and individually indorsed by the same partner who had indorsed the other notes; and the latter, in order to consummate the sale, personally guaranteed that the purchaser would pay the rent of the premises in which the business was being conducted, it was *held* in a suit for a partnership accounting, that the cancelation of the old notes and their surrender to the partner making them did not discharge him from liability to his copartner on account of the indebtedness represented by them, and entitle him to claim an equal part of the new notes, and to have them delivered to him at once and unconditionally, in view of the con-

tinuing liability of the copartner, who had individually indorsed the new notes and guaranteed the payment of the rent by the purchaser.

No. 1974.  Submitted February 10, 1909.  Decided March 2, 1909.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia in a suit for the dissolution of a partnership and for an accounting. *Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellant, Joseph Van Fleet, filed this bill to obtain the dissolution of a partnership, and for an account and settlement.

The bill alleges that complainant and defendant, Abe King, entered into a partnership agreement, on December 2, 1907, for the purpose of operating a barroom in the city of Washington. A copy of the agreement is made a part of the bill.  It provides for the business above stated.  King is to secure a lease to premises satisfactory to both parties, and to provide the necessary money to obtain said lease, and a license to carry on the business, and also the necessary stock and fixtures.  The lease and license are to be in the name of Van Fleet, and the business conducted in his name.  To secure the money advanced by King, Van Fleet agrees to give his promissory notes, to be known as first trust notes, payable on demand to King or order, and bearing interest at the rate of 6 per cent per annum.  Van Fleet, joined by his wife, shall execute a deed conveying lease, license, stock, fixtures, etc., to Bailey in trust to secure the payment of said notes.  Van Fleet agrees to conduct the business in person, keeping an account of the same as King shall direct, and retain for compensation, out of earnings, the sum of $75 per month.  A daily statement is to be furnished King, and all money shall be deposited to the credit of Van Fleet & Company, provided that Van Fleet may retain in his hands not exceeding $25 at any one time, for use in making change in said business.  Van Fleet shall not, without the previous con-

sent of King, in writing, transfer or encumber the said business and property, or incur any debts in the business, exceeding $300, at any one time. He shall indorse said license and lease in blank, and each subsequent lease and license that may be obtained, for the benefit and security of King; and he constitutes King, irrevocably, his attorney in fact, with full power to make and sign, in his (Van Fleet's) name, every indorsement and other instrument provided for. Money deposited in bank to credit of Van Fleet & Company shall be withdrawn by checks drawn and signed by King in the name of Van Fleet & Company, and shall be applied by King, in such order as he shall elect, to unpaid expenses of said business, and upon said trust notes, and to himself at the rate of $25 per month in compensation for his services hereunder. Van Fleet shall make another promissory note, to be known as the second trust note, for $7,000, payable on demand to King or order, with 6 per cent interest per annum, and make a second conveyance of all of the property aforesaid to said Bailey, in trust for the further security of King hereunder, representing his partnership interest as hereinafter mentioned. Upon default in payment of any of said notes, or interest, King may require a sale under said trust conveyances, appropriating the proceeds, first, to said first trust notes; second, to said second trust note, after the payment of any debts; and any surplus remaining shall be paid to Van Fleet. Upon payment of said first trust notes, all of the same and the second trust note shall be canceled and surrendered to Van Fleet, said trusts released, and thereupon said Van Fleet and King shall continue to be partners and equal owners of said business and equipments; business thereafter to be conducted as they further agree. "In case of failure of said business or sale of said equipment before the payment of said first trust notes, the amount remaining unpaid on said first trust notes and all unpaid debts incurred in the management of said business shall be borne and paid equally by Van Fleet and King, and any surplus thereafter remaining shall be divided equally between them, except that, if such failure be caused by the wrongdoing

of either of them, such wrongdoer shall bear all loss thereby incurred or caused." It is further provided that the deeds of trust shall be in the form approved by said Bailey. And that the agreement shall be binding upon and for the benefit of the personal representatives of said Van Fleet and King respectively, "except that Van Fleet shall not assign this agreement, or his interests or duties hereunder without the consent, in writing, of said King." The bill then proceeds to allege:

"3. That, in pursuance to the aforesaid agreement, the defendant did provide the necessary money to obtain the lease and licenses and the necessary stock and trade and equipments, etc., for the place of business known as 1216 Pennsylvania avenue, N. W., which business was conducted under the name and style of Van Fleet & Company; and your complainant in pursuance to his part of said agreement, did execute and deliver to the defendant certain promissory notes, in all amounting to the sum of $4,650, made payable to the order of said defendant, all bearing date the 12th day of December, 1907, and secured by a first deed of trust upon the premises, as stipulated in the agreement hereinbefore referred to; and did in all other respects comply with the terms and conditions imposed upon him by the aforesaid agreement; and said business was conducted from them until the 19th day of May, 1908, by your complainant. On said date, the defendant, with the consent of complainant, sold the partnership property to one Moses Dade for $7,500, the terms of said sale being as follows, namely:

"$1,500 cash and two certain promissory notes, with responsible indorsers, for $500 each, one payable thirty days after date, and the other ninety days after date, the balance being paid by said Dade executing and delivering certain promissory notes in the sum of $5,000, all being secured by a first deed of trust on said premises and equipment therein; all of said notes being made payable to the order of the defendant, and delivered to him along with the said amount of cash.

"That the deeds of trust theretofore given by your complainant, along with the promissory notes secured thereby, were

marked canceled and paid, and delivered to your complainant by the defendant. Out of the proceeds of said sale, the defendant then proceeded to pay off all the outstanding indebtedness of said business, which amounted to about $1,350, but refused, and still refuses, to account to the complainant for the proper balance of the proceeds of said sale as provided for under the terms of the agreement hereinbefore recited."

Complainant prayed a dissolution of the partnership, the taking of an account, and the appointment of a receiver to take charge of the proceeds of the sale that had been made. Answer under oath was waived.

King answered under oath, admitting the allegations of the partnership agreement. He answered paragraph 3 of the bill (hereinbefore set forth) as follows:

"3. The statements contained in the paragraph numbered 3 of said bill are substantially true and correct excepting so much thereof as alleges (1) payment of the notes made by the complainant, and (2) that all the notes made by Dade were secured by deed of trust, and (3) refusal by this defendant to account to the complainant; as to which excepted matters the truth is as hereinafter stated in this answer.

"The notes made by the complainant, amounting to $4,650, known as the first trust notes, and referred to in said bill and in said agreement of December 2, 1907, bore date December 12, 1907, and were used by this defendant to obtain and provide the money required in the establishment, under said agreement, of the business in said agreement mentioned. In such use of said notes this defendant assumed liability as endorser thereof. The said business was found to be unprofitable under the management provided by said agreement, and therefore this defendant, with the consent of the complainant, negotiated a sale of said business to Moses H. Dade, who agreed to purchase said business for $7,500; which agreement was in writing, dated May 18, 1908, and signed by the complainant and said Dade and this defendant, and a copy thereof, marked exhibit A. K. No. 1, is filed herewith and made part of this answer. At the same time

this defendant, with the consent of the complainant, arranged with the holders of said first trust notes to substitute therefor notes to be made by Dade under his said agreement, and to be indorsed by this defendant.

"In order to obtain the owners' consent to the transfer of the lease as provided in said agreement of May 18, 1908, it was necessary for this defendant to guarantee the payment of rent to accrue from Dade, and accordingly he did so guarantee the same, and said owners consented to said transfer, which guaranty and consent are in writing, dated June 2, 1908, a copy whereof, marked Exhibit A. K. No. 2, is filed herewith and made part of this answer, and on the same day, June 2, 1908, in pursuance of said agreement of May 18, 1908, by bill of sale, transferred said business to said Dade, and made the notes and deed of trust required of him by said agreement, and by deed of release to said Dade, as grantee of the complainant, the said business was released from the operation of the first trust given by the complainant, and the notes for $4,650 thereby secured were canceled and returned to the complainant. The said bill of release to him was duly recorded on June 3, 1908, in the Land Records of the District of Columbia.

"By reason of the premises this defendant then became and was accountable to the complainant in the sum of $7,519.23, consisting of the following charges, *viz.*:

| | | |
|---|---:|---:|
| Amount received from Dade as proceeds of sale: | | |
| In cash ............................. | $1,500 | |
| In notes ........................ | 6,000 | $7,500.00 |
| | | |
| Balance on hand (in bank) under agreement of | | |
| December 2, 1907 ........................ | | 16.66 |
| Due from complainant under said agreement .... | | 2.57 |
| | | |
| Total, as above .................... | | $7,519.23 |

The proper application of said total amount was as follows, *viz.:*

Principal sum of said first trust notes made by complainant ............................... $4,650.00

Interest on said first trust notes..... $142.55

Sundry debts incurred in said business as stated in Exhibit A. K. No. 3, filed herewith and made part of this answer ...................... 1,285.81    1,428.36

Surplus to be divided between complainant and this defendant under agreement of December 2, 1907 ................................. $1,440.87

Total as above .....................$7,519.23

"The complainant's share of said surplus is $720.43½ on account of which he is chargeable with the sum of $2.57 due from him, as aforesaid, and also with the sum of $50 paid to him by this defendant on June 20, 1908, on account of said surplus, leaving due to the complainant the sum of $667.86, and no more.

"On or about June 22, 1908, this defendant prepared and submitted to the complainant a statement of said account, showing the total amount and the application thereof as aforesaid, and then informed the complainant that he, this defendant, proposed and intended to pay to the complainant forthwith the further sum of $50 on account of his share of said surplus,. and to pay to him the remainder of his said share in instalments of $100 each in each alternate month, commencing with the month of February, 1909, out of the moneys to be paid by Dade in payment of the secured notes made by Dade, as aforesaid, and also that this defendant proposed and intended to apply the two unsecured notes made by Dade, for $500 each, and maturing in one month and three months, respectively, as a credit forthwith on the former first trust indebtedness aforesaid, and

that he had applied the $1,500 cash received from Dade to the payment of the $1,428.36 for sundry debts and interest aforesaid and the advance of $50, made June 20, 1908, to the complainant.

"The complainant was satisfied with said statement of the account, but expressed dissatisfaction as to the proposed method of paying his share of said surplus, and demanded that he be paid said share in cash forthwith; which said demand this defendant rejected and believes the same to be unreasonable, unjust, and impracticable. The defendant is advised and believes that, under said agreement of December 2, 1907, it was proper for him to make application of the cash and notes received from Dade in the following order, viz.: (1st) to the payment of the debts incurred in said business, together with said former first trust of $4,650, and (2d) to apply the surplus as profits, to be divided between the complainant and this defendant under said agreement. The said profits are wholly contingent, and depend mainly upon Dade's ability to pay all the notes made by him as aforesaid, together with the expenses of said business, as to which expenses this defendant became a guarantor in respect of the rent as aforesaid. The notes made by Dade are dated June 2, 1908, and bear interest at the rate of 6 per cent per annum, and consist of one unsecured note for $500, payable in one month, and one other unsecured note for $500, payable in three months, and fifty other notes for $100 each, secured by Dade's deed of trust aforesaid, one of said secured notes being payable in each month, commencing on the 2d day of August, 1908.

"Upon the complainant's refusal to accept the settlement so proposed as aforesaid, the same was withdrawn by this defendant, who now claims his rights in the premises, as the court may determine the same."

Attached as an exhibit to this answer is the following agreement for the sale of the business to Moses H. Dade, which was signed by him and the parties to this suit:

                                        "May 18, 1908.
"Joseph Van Fleet agrees to sell and convey to Moses H.

Dade for the sum of $7,500 the lease now held by said Van Fleet for premises No. 1216 Pennsylvania avenue, Northwest, Washington, District of Columbia, and the barroom business there conducted by him, including all licenses, fixtures, wines, liquors, cigars, and other stock in trade and other equipment of said business, and the good will thereof, and all other personal property upon said premises, excepting all the household furniture on the third floor, coil box, beer pump and apparatus and one bottle beer box. The said Dade has this day deposited with Abe King the sum of $500, to be applied on account of said purchase price upon the transfer of said license and lease to said Dade; otherwise to be returned to said Dade. The balance of the purchase money to be paid as follows:

"The further sum of $1,000 in cash and one promissory note for $500 to be indorsed by Benjamin Heide, payable in three months; one other note for $500, payable in one month, and fifty other notes secured by first trust, each for $100, payable monthly, commencing two months from date; all said notes bearing interest at the rate of 6 per centum per annum. The form and substance of said notes to be as agreed upon by Crandal Mackey and Lorenzo A. Bailey, who are designated as the trustees herein. All said notes to be made by said Dade payable to the order of Abe King. This agreement is conditioned upon assent by the excise board District of Columbia to the transfer of the barroom license, and also the consent of the owners of said premises to the transfer of said lease. Upon the consummation of this transfer of the lease and license, and the full performance of these agreements which are to be performed by the said Van Fleet, the said Van Fleet shall account to said Dade for all the receipts and disbursements in and about the said business, including also the pool business, commencing with the 19th of May, 1908, and the payment to said Dade by said VaVn Fleet of all the net receipts aforesaid on and after the date last aforesaid is understood to be part of the terms of this agreement on the part of the said Van Fleet to be performed. The said Van Fleet shall furnish the said Dade forthwith under oath a list of all his creditors, as required by statute. The said

Dade is to pay the reasonable charges for the preparation of papers required hereunder. The said King agrees to pay all claims against the pool tables as the same become due."

The above is followed by an agreement between the lessors of the building and King, consenting to the transfer of the lease from Van Fleet to Dade; the said King guaranteeing the payment of all rent accruing thereunder, while Dade shall remain as a tenant under said lease.

Another exhibit contained an account of King showing money advanced and paid out by him to parties named therein, amounting in the aggregate to $1,285.81.

No replication was filed to the answer, and counsel for complainant ordered the cause set down for hearing on bill and answer. Upon such hearing, the court entered a decree dissolving the partnership, and further:

"22. That the said defendant indorse without recourse to him, and thereupon deliver to the said complainant or to one of the complainant's solicitors of record in this cause the seven promissory notes of Moses H. Dade, dated June 2, 1908, and maturing respectively 38, 40, 42, 44, 46, 48, and 51 months after date, the same being seven of the notes for one hundred dollars each, mentioned in said answer. *Provided,* that, before such delivery of said note maturing fifty-one months after date, the complainant shall pay to the defendant the sum of thirty-two and 14-100 dollars ($32.14) with interest thereon at the rate of 6 per cent per annum from June 2, 1908, to the date of such payment; but, if the complainant shall fail to make such payment on or before the 30th day of November, 1908, then at any time thereafter the defendant, if he so elect, may, in lieu of such delivery of said last above mentioned note to the complainant, pay to the complainant the sum of sixty-seven and 81-100 dollars ($67.81) with interest thereon at the rate of 6 per cent per annum from June 2, 1908, to the date of such payment."

*Mr. Robert E. Mattingly, Mr. John C. Gittings,* and *Mr. J. M. Chamberlin* for the appellant.

*Mr. Lorenzo A. Bailey* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The complainant failing to reply to the answer, and submiting the cause upon the pleading, the answer must be accepted as true in every particular. *Alfred Richards Brick Co.* v. *Trott,* 16 App. D. C. 293, 299.

The contention of the appellant is that the substitution of Dade's notes for the first trust notes executed by Van Fleet, and the surrender of the same to the latter, had the effect to discharge the same absolutely by novation, not only as to the holders of said notes, but as to King, the indorser and copartner. We are not concerned with the holders of said notes, who hold the substituted notes of Dade with King's indorsement, secured by a first trust. The question for determination is whether the effect of the transaction was to discharge Van Fleet from all liability to King on account of the indebtedness represented by said first trust notes, and to entitle him to claim an equal part of the remaining notes, and have these delivered to him at once and unconditionally. While the transaction between King, who, it must be remembered, represented the partnership also, and the holders of the first trust notes, by which they accepted the Dade notes with King's indorsement, may have amounted to a complete novation in so far as they were concerned, it does not follow that King intended them to be treated as if an absolute payment of said notes and a release of Van Fleet from all obligation of the partnership agreement in accordance with which they had been executed and delivered to King. Those notes, or rather the advances which they secured, were obligations of the partnership, and payable out of its assets before any distribution could be properly made among the partners; and this is expressly alleged in the answer. The partnership business had become unsatisfactory to both partners. The sale to Dade was to the advantage of the partnership, and was concluded with the approval and consent of Van Fleet. To complete this sale by obtaining consent of the owners of the premises to the assignment of the lease to Dade, King was compelled to guarantee

the payment of the rent by Dade. To have the Dade notes secured by a first mortgage, it was important to all concerned to have the first trust notes canceled and their lien released. King accomplished this by getting the holders of first trust notes to accept a similar amount of the Dade notes in lieu of them, secured, however, by King's individual indorsement as well as the mortgage. It is to be remembered that these first trust notes had been executed and delivered to King, under the terms of the partnership agreement, to secure him for money advanced and debts assumed for partnership account, and had then been indorsed by him individually to the holders.

Now, while it may be clear enough that King was willing and intended to have Van Fleet released from any individual liability to the former holders of said first trust notes, it does not appear that he intended to release him from all liability for partnership debts, and his obligation under the partnership agreement to secure King for his advances on account of the partnership. There is not the slightest indication of a consideration to King, by way of benefit or otherwise, for any such result. It would be plainly inequitable to treat the transaction as if there had been a cash payment by Dade to the extent of said first trust notes, so as to compel King at once to divide the remaining Dade notes with Van Fleet, and turn over to the latter his share of them. As there was no such payment, King's liability on account of the substituted notes indorsed by him, in case of default by Dade, would remain while the security provided in the partnership agreement would be impaired. Nothing less than an express agreement to that effect, or the existence of circumstances from which it would necesarily be implied, could justify such a conclusion. We find none such. Such inferences as we may be permitted to deduce from the allegations of the answer are against that conclusion.

Complete justice would have been attained by a decree ordering the notes to be turned over to a receiver, and, after the satisfaction of those indorsed to creditors by King, and of such sums as he may have advanced to pay partnership obligations, to divide the sums collected on the other notes equally between the

parties. But the cost of a receivership would occasion the diminution of an already small sum, and the complainant did not insist upon it. In fact, the only error assigned relates to the proposition that has been considered.

Finding that there was no error in the decree on that point, it will be affirmed with costs.                          *Affirmed.*